Jacob Leavitt
Bighorn Law
2225 E. Flamingo Rd
Suite #300, BLDG #2
Las Vegas, NV 89119
Telephone: (702)333-1111
jacob@bighornlaw.com


John Doubek, Licensed in Montana
(appearing *pro hac vice, application pending*)
DOUBEK, PYFER & STORRAR
PO Box 236
Helena MT 59624
Telephone: (406) 442-7830
Facsimile:  (406) 442-7839
john@lawyerinmontana.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DENNIS MONTGOMERY and BRENDA MONTGOMERY,<br><br>              Plaintiff,<br><br>     v.<br><br>SPECIAL AGENT MICHAEL WEST, and NINE UNKNOWN NAMED AGENTS OF THE FEDERAL BUREAU OF INVESTIGATION, INTERNAL REVENUE SERVICE AND DRUG ENFORCEMENT AGENCY,<br><br>              Defendants. | Case No.<br><br><br><br><br><br>**COMPLAINT PURSUANT TO** *BIVENS* |

Plaintiffs for their complaint against the Defendants allege the following:

1. Plaintiffs owned a home located 12720 Buckthorne Lane, Reno, Nevada and a storage unit at 888 Maesto Drive, Reno, Nevada in 2006. Jurisdiction is pursuant to 28 USC 1331.

2. On March 1 and 3 of 2006, 8 agents from the Federal Bureau of Investigation (FBI), including Defendant West, one agent from Defendant Internal Revenue Service (IRS),

1

and one from Drug Enforcement Agency (DEA), executed search warrants and raided Plaintiffs' said home and storage unit. On March 8, 2006, the FBI executed returns on the search warrants and the requisite inventories of items seized were provided to the Federal Court.

3. The home and storage units' raids were without notice and were based on a false affidavit and altered documents to the Court. The raids violated 42 USC§388 and 1983 and Plaintiffs' constitutional rights. The ten agents had their guns drawn and had a camera crew. Plaintiffs' property was wrongfully taken by Defendants. These special agents also called and harassed Plaintiffs' children falsely telling them that Plaintiff Dennis Montgomery was being investigated for stealing U.S. Government classified documents and would be tried under U.S. espionage laws. They also threatened the children as co-conspirators if they were hiding any electronic media or documents. Plaintiffs duly filed motions, inter alias, for the return of their property following hearings and briefs.

4. The Federal Court determined that none of the seized property was classified and that Defendants had displayed callous disregard for Plaintiffs' constitutional rights. The Federal Court determined the government lacked probable cause to conduct any search. It also determined that none of the materials subject of the search warrants were classified which was later admitted by the Federal Government.

5. Defendant West was accompanied by nine other agents of the U.S. Government when the Government conducted its raid/invasion of Plaintiffs, their home, and their property.

6. The Defendants did indeed barge into Plaintiffs' home with their guns drawn, yelling and threatening Plaintiffs. They falsely imprisoned both Plaintiffs and forcibly restrained Dennis Montgomery by tying him up.

7. After the Federal Court ruled the searches and seizures were unlawful, and premised on false affidavits, and that documents had been tampered with by the agents, the Federal agents interfered in a business dispute which Plaintiffs had, favoring and wrongfully attempting to help the other side, thus violating Plaintiffs' rights. As a result of that, the IRS retaliated against Plaintiffs and began an audit over prior tax returns of Plaintiffs.

The IRS prohibited Plaintiffs from providing and obtaining documents in support of their own position.

8. In response to Plaintiffs' efforts to question the legitimacy of the search and seizure and destruction of their property and documents, Defendants, with the help of USA Attorney, Gregory W. Addington, caused a lifetime gag order in the form of a US protective order (PO) and State Secrets Privilege (SSP) to hide certain US Government misdeeds in the FBI/CIA/NSA domestic surveillance programs operating in Reno, Nevada, while under contract with the CIA, DOD, AF, DIA, HS, and DNI. That state secrets claim was signed by the Director of National Intelligence on September 19, 2006 and is attached hereto as Exhibit 1 and was approved and entered by the Federal District Court. There are two orders attached hereto as Exhibits 2 and 3.

9. The Government prohibited Dennis Montgomery from defending himself against an IRS audit and forced Plaintiffs to file a voluntary bankruptcy, which the Government in turn prevented Plaintiff, Dennis Montgomery from obtaining relief and still to the present wrongfully takes part of his social security disability.

10. In further retaliation, the DOJ, CIA, and FBI raided without any warrant, subpoena or other process Dennis Montgomery's attorney's offices and seized his financial records, attorney-client files, evidence of Government misconduct, and evidence of US SEC inside trading information. The Federal agencies said they were going to review the same (over 140 boxes) but instead they scrubbed the documents and returned only a limited number of documents to his law firm. In December 2015, Plaintiff, Dennis Montgomery asked for the return of his files and records but was told the Government was still reviewing them. The Government has still never returned Dennis' records to him.

11. Plaintiffs were advised by the Government that they were prohibited by the PO and SSP from asserting a *Biven* claim and other claims against the Government, if the claim or claims had anything to do with Plaintiff, Dennis Montgomery's work of surveillance either for the U.S. or a contractor of the U.S. Only recently, did the government, through its U.S. Attorney office, agree to lift the orders so Plaintiffs could assert this Bivens

3

1    complaint. The U.S. Attorney agreed to lift the orders in an email dated February 2, 2021

2    which is attached as Exhibit 4.

3    12. Notwithstanding the warnings by Government personnel, Plaintiffs allege and advance

4    this *Bivens* complaint not intending to violate any order and believing they should have

5    full right to file this *Bivens* claim.

6    13. Plaintiffs have suffered loss of and damages to their business, damage to their

7    reputations, physical and emotional damages, distress and suffering, terrible alterations

8    and damages to their lives and lifestyle.

9        Wherefore, Plaintiffs prays for such special, general, compensatory, and punitive

10   damages and fees as are proved at trial and a such other relief as is just and proper.


12                          DEMAND FOR JURY TRIAL


14       Plaintiffs hereby demand their rights to a jury trial on all issues triable by jury.

15   DATED this ___11___ day of March, 2021.


17                                 DOUBEK, PYFER & STORRAR

18                                 By _____

19                                    John Doubek
                                      Attorney for Plaintiff


22                                 BIGHORN LAW

23                                 By _____
                                      Jacob Leavitt
24                                    Attorney for Plaintiff

4

EXHIBIT
1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

ETREPPID TECHNOLOGIES, LLC, a )
California Corporation,        )      CV-N-06-00415(BES)(VPC)
                              )
            Plaintiff          )
                              )
      v.                       )
                              )
                              )
DENNIS MONTGOMERY, et. al.,   )
                              )
            Defendants.        )
_____)

DENNIS MONTGOMERY, et. al.,   )
                              )
            Plaintiffs         )
                              )      CV-N-06-00056(BES)(VPC)
      v.                       )
                              )
                              )
ETREPPID TECHNOLOGIES, INC.,  )
et. al.                        )
                              )
            Defendants.        )
_____)

DECLARATION AND FORMAL CLAIM OF
STATE SECRETS AND STATUTORY PRIVILEGES
BY JOHN D. NEGROPONTE,
DIRECTOR OF NATIONAL INTELLIGENCE

I, JOHN D. NEGROPONTE, hereby declare as follows:

1. I am the Director of National Intelligence (DNI)

of the United States; I have held this position since

April 21, 2005. From June 28, 2004, until my appointment

as DNI, I served as the United States Ambassador to Iraq.



EXHIBIT
1

From September 18, 2001, until my appointment in Iraq, I
served as the United States Permanent Representative to the
United Nations.  I have also served as Ambassador to
Honduras (1981-1985), Mexico (1989-1993), and the
Philippines (1993-1996), and as Deputy Assistant to the
President for National Security Affairs (1987-1989).

2.  The statements made herein are based on my
personal knowledge, as well as on information provided to
me in my official capacity as DNI, and on my personal
evaluation of that information.  In personally considering
this matter, I have read the information contained in the
separate classified declaration filed in camera and ex
parte in this case.

3.  The purpose of this declaration is to assert
formally, in my capacity as DNI and head of the United
States Intelligence Community, the state secrets privilege
to protect intelligence information ("state secrets
privilege"), as well as a statutory privilege under the
National Security Act, 50 U.S.C. § 403-i(i)(1), to protect
intelligence sources and methods from unauthorized
disclosure.  Unauthorized disclosure of information covered
by the state secrets and statutory privileges reasonably
could be expected to cause serious, and in some cases
exceptionally grave damage to the national security of the

2

United States, and such information should therefore be
excluded from any use in this litigation.

I.  STATUTORY AND EXECUTIVE ORDER AUTHORITIES

4.  The position of Director of National Intelligence
was created by the Intelligence Reform and Terrorism
Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a),
1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending
sections 102 through 104 of Title I of the National
Security Act of 1947).  Subject to the authority,
direction, and control of the President of the United
States, the DNI serves as the head of the United States
Intelligence Community and as the principal advisor to the
President, the National Security Council, and the Homeland
Security Council for matters related to intelligence and
national security.  *See*, 50 U.S.C. § 403 (b)(1),(2).

5.  The "United States Intelligence Community"
includes the Office of the Director of National
Intelligence; the Central Intelligence Agency; the National
Security Agency; the Defense Intelligence Agency; the
National Geospatial-Intelligence Agency; the National
Reconnaissance Office; other offices within the Department
of Defense for the collection of specialized national
intelligence through reconnaissance programs; the
intelligence elements of the military services, the Federal

3

Bureau of Investigation, and the Department of Energy; the
Office of Intelligence and Analysis of the Department of
the Treasury; the Drug Enforcement Administration's
Intelligence Division; the Bureau of Intelligence and
Research of the Department of State; elements of the
Department of Homeland Security concerned with the analysis
of intelligence information (including the Office of
Intelligence of the Coast Guard); and such other elements
of any other department or agency as the President may
designate, or as may be jointly designated by the DNI and
the head of the department or agency concerned, as an
element of the United States Intelligence Community. *See*,
50 U.S.C. § 401(a)(4).

6.   The responsibilities and authorities of the DNI,
enumerated in the National Security Act, as amended, at 50
U.S.C. § 403-1, include ensuring that national intelligence
is provided to the President, the heads of the departments
and agencies of the Executive Branch, the Chairman of the
Joint Chiefs of Staff and senior military commanders, and
the Senate and House of Representatives and committees
thereof.  50 U.S.C. § 403-1(a)(1).  The DNI is also charged
with establishing the objectives of, determining the
requirements and priorities for, and managing and directing
the tasking, collection, analysis, production, and

4

dissemination of national intelligence by elements of the
United States Intelligence Community.  50 U.S.C. § 403-
1(f)(1)(A)(i), (ii).  The DNI is responsible for developing
and determining, based on proposals submitted by heads of
agencies and departments within the United States
Intelligence Community, an annual consolidated budget for
the National Intelligence Program for presentation to the
President, and for ensuring the effective execution of the
annual budget for intelligence and intelligence-related
activities, including managing and allotting appropriations
for the National Intelligence Program.  Id. § 403-1(c)(1)-
(5).

        7.   In addition, the National Security Act of 1947, as
amended, provides that "The Director of National
Intelligence shall protect intelligence sources and methods
from unauthorized disclosure."  50 U.S.C. § 403-1(i)(1).
Consistent with this responsibility, the DNI establishes
and implements the guidelines of the United States
Intelligence Community for the classification of
information under applicable law, Executive Orders, or
other Presidential directives, and access and dissemination
of intelligence.  Id. § 403-1(i)(2)(A), (b).  In particular,
the DNI is responsible for the establishment of uniform
standards and procedures for granting access to Sensitive

Compartmented Information to any officer or employee of any agency or department of the United States and for ensuring consistent implementation of those standards throughout such departments and agencies. *Id.* § 403-1(j)(1),(2).

8.  By virtue of my position as the DNI, and unless otherwise directed by the President, I have access to all intelligence related to national security that is collected by any department, agency, or other entity of the United States.  Pursuant to Executive Order 12958, as amended,[1] the President has authorized me to exercise original TOP SECRET classification authority.  After personal consideration of the matter, I have determined that the classified *ex parte*, *in camera* declaration which accompanies this assertion of the state secrets privilege and the statutory privilege to protect intelligence sources and methods is properly classified under § 1.3 of E.O. 12958, because the unauthorized public disclosure of information contained in that declaration reasonably could be expected to cause serious, and in some cases exceptionally grave damage to the foreign policy and national security of the United States.

---

[1] Executive Order 12958 was amended by Executive Order 13292.  *See* Exec. Order No. 13292, 68 Fed. Reg. 15315 (Mar. 28, 2003).  All citations to Exec. Order No. 12958 are to the Order as amended by Exec. Order No. 13292.  *See* Exec. Order No. 12,958, 60 Fed. Reg. 19825 (1995), *reprinted as amended in* 50 U.S.C.A. § 435 note at 180 (West Supp. 2006).

II.   ASSERTION OF THE STATE SECRETS
      AND STATUTORY PRIVILEGES

9.   After careful and actual personal consideration of the matter, I have determined that the unauthorized disclosure of certain information that may be implicated by the parties' claims in this matter, as set forth here and described in more detail in the classified *ex parte, in camera* declaration which accompanies this declaration, reasonably could be expected to cause serious, and in some cases exceptionally grave damage to the national security of the United States, and thus must be protected from disclosure and excluded from this case. Therefore, I formally invoke and assert the state secrets privilege to prevent the disclosure of that information.

10.   Through this declaration, I also invoke and assert a statutory privilege held by the DNI under the National Security Act, as amended, to protect the intelligence sources and methods implicated by this case. *See*, 50 U.S.C. § 403-1(i)(1). My assertion of this statutory privilege for intelligence sources and methods is coextensive with my state secrets privilege assertion.

11.   With my assertion of the state secrets privilege and the statutory privilege to protect intelligence sources and methods, I respectfully ask the Court to prevent any

party from testifying, eliciting testimony, producing, disclosing, entering into evidence or making any other use in discovery, at trial, or in any other way in connection with this case, information concerning: (a) the existence or non-existence of, any actual or proposed relationship, agreement, connection, contract, transaction, communication, or meeting of any kind between any entity in the United States Intelligence Community, or any current or former official, employee, or representative thereof, and any individuals or entities associated with this lawsuit, on any current or former officer or employee thereof; and (b) any actual or proposed interest in, application, or use by any entity in the United States Intelligence Agency, or any current or former official, employee, or representative thereof, of any technology, software, or source code owned or claimed by any individuals or entities associated with this lawsuit.

12.  I have determined that any unauthorized disclosure of the information described in Paragraph 11 reasonably could be expected to cause serious, and in some case exceptionally grave damage to national security since the United States can neither confirm nor deny such information without compromising the effectiveness of intelligence sources and methods.  Public disclosure of

8

information that confirms the use of particular
intelligence sources and methods compromises the
effectiveness of those sources and methods by alerting
likely targets to their use, while public denial of the use
of particular intelligence sources and methods reveals to
adversaries that some practices are secure. Any truthful
response to confirm or deny allegations related to
intelligence sources or methods informs hostile foreign
intelligence agencies about the manner in which the United
States collects intelligence information, and could result
in a loss of valuable intelligence when our adversaries are
able to take countermeasures. Similarly, if the United
States government was required to admit or deny allegations
made in litigation concerning its classified contracting
process, then classified contract relationships could be
exposed, which would cause harm to the national security.
The precise nature of the harm that would ensue from the
disclosure of the information protected by the state
secrets privilege and statutory privilege to protect
intelligence sources and methods is set forth in detail in
the *in camera, ex parte* declaration.

9

## CONCLUSION

13.   I respectfully request that the Court grant the

Department of Defense's motion for a protective order.


I hereby declare under penalty of perjury that the

foregoing is true and correct.

Executed this 19th day of September 2006.


JOHN D. NEGROPONTE
DIRECTOR OF NATIONAL INTELLIGENCE

10

Case 3:06-cv-00056-PMP-VPC   Document 253   Filed 08/29/2007   Page 1 of 5

EXHIBIT
2

1   PETER D. KEISLER
    Assistant Attorney General
2   STEVEN W. MYHRE
    Acting United States Attorney
3   District of Nevada
    GREG ADDINGTON
4   Assistant United States Attorney
    Nevada Bar 6875
5   100 West Liberty, Suite 600
    Reno, Nevada 89501
6   VINCENT M. GARVEY
    Deputy Branch Director
7   CARLOTTA P. WELLS
    Senior Trial Counsel
8   Federal Programs Branch
    Civil Division – Room 7150
9   U.S. Department of Justice
    20 Massachusetts Ave., NW/P.O. Box 883
10  Washington, D.C. 20044
    Telephone: (202) 514-4522
11  Facsimile:  (202) 616-8470

12              UNITED STATES DISTRICT COURT
                    DISTRICT OF NEVADA
13

14  DENNIS MONTGOMERY, et al.,

15          Plaintiffs,

16  v.                                    3:06-CV-00056-PMP-VPC
                                          BASE FILE
17  ETREPPID TECHNOLOGIES, INC.,
    et al.,                               3:06-CV-00145-PMP-VPC
18
            Defendants.
19

20              UNITED STATES   PROTECTIVE ORDER

21      Pursuant to Federal Rule of Civil Procedure 26, in order to protect the classification,

22  confidentiality and the rights to information and documents developed and disclosed in

23  connection with this litigation, and to facilitate discovery by and among the parties to this

24  action and from third parties, the United States hereby proposes entry of the following

25  protective order.

26

27

28

EXHIBIT
2

IT IS HEREBY ORDERED as follows:

1.      Certain information that may or may not be relevant to the claims and/or defenses of eTreppid Technologies, LLC and its current or former officers or employees (hereinafter collectively referred to as "eTreppid"), Warren Trepp, Dennis Montgomery, the Montgomery Family Trust and/or Dennis Montgomery and Brenda Montgomery as trustees of the Montgomery Family Trust (hereinafter collectively referred to as "the Parties"), as delineated in paragraphs 2 and 3 below, is subject to the state secrets privilege, the disclosure of which reasonably could be expected to cause serious, and in some cases exceptionally grave, damage to the national security of the United States. Such information shall not be subject to discovery or disclosure by any of the Parties during all proceedings in these actions, and shall be excluded from evidence at trial.

2.      The Parties shall not serve or take any discovery relating to or questioning the existence or non-existence of any actual or proposed relationship, agreement, connection, contract, transaction, communication or meeting of any kind between any entity in the intelligence community as defined by the National Security Act of 1947, 50 U.S.C. § 401(a)(4), which includes intelligence elements of the military services, or any current or former official, employee or representative thereof (hereinafter collectively referred to as "intelligence agency") and the Parties.

3.      The Parties shall not serve or take any discovery relating to or questioning any actual or proposed intelligence agency interest in, application of or use of any technology, software or source code owned or claimed by the Parties.

4.      This Order does not preclude the Parties from serving or taking any discovery from other Parties or third parties relating to, or questioning, the following:

a.      The existence and nature of the "Big Safari" contract (hereinafter referred to as "the Big Safari Contract") between eTreppid and the Unites States Air Force, including but not limited to the fact that the Big Safari Contract required eTreppid to perform data analysis and the fact that the data analysis eTreppid performed under the Big Safari Contract involved image identification technology;

b.      The fact that the Big Safari Contract required employees and/or officers of eTreppid to sign secrecy agreements with the Department of Defense;

c.      The computer source code, software, programs, or technical specifications relating to any technology owned or claimed by any of the Parties ("the Technology");

d.      Any contract, relationship, agreement, connection, transaction, communication or meeting of any kind relating to the Technology, unless covered by paragraphs 2 or 3 above;

e.      Any actual or potential commercial or government applications of the Technology, unless covered by paragraphs 2 or 3 above;

f.      Facts relating to the issue of ownership by the Parties of any right or interest in the Technology, unless covered by paragraphs 2 or 3 above;

g.      The revenue, income, expenses, profits and losses of the Parties, unless disclosure of such information would be covered by paragraphs 2 or 3 above; and

h.      Any consideration received by any of the Parties relating to the Technology, unless covered by paragraphs 2 or 3 above.

5.      The Parties shall not discuss, mention, question or introduce as evidence, either at trial, in any pleading or motion, or in any case-related correspondence, any actual or proposed relationship, agreement, connection, contract, transaction, communication or meeting of any kind between any intelligence agency and any of the Parties.

-3-

6.      The Parties shall not discuss, mention, question or introduce as evidence, either at trial, in any pleading or motion, or in any case-related correspondence, any actual or proposed intelligence agency interest in, application of or use of the Technology.

7.      No question and no document request in discovery or at trial shall require a response that would include any information covered by paragraphs 2, 3, 5 or 6 above, but if the responding party believes that a full and complete response could disclose information within the scope of the state secrets privilege, the responding party shall provide timely notice of such belief and the full and complete response to the United States prior to responding, and shall respond only with information that the United States has determined is not subject to the state secrets privilege.

8.      The military and state secrets privilege, the claim that any discovery is covered by paragraphs 2 or 3 above, and the claim that any evidence is covered by paragraphs 2 or 3 above, can only be invoked by the United States.  These claims cannot be asserted by a private individual or entity.

9.      All Parties shall serve the attorneys for the United States with (a) a copy of all notices of depositions, (b) a copy of all requests for discovery and responses thereto, and (c) a copy of all pleadings and motions filed together with supporting memoranda (hereinafter collectively referred to as the "documents"), unless such documents request or relate to information covered by paragraphs 2 or 3 above.  If the documents request or relate to information covered by paragraphs 2 or 3 above, the Parties shall submit the documents to the United States for privilege review prior to service or filing.  All documents filed or sought to be used as evidence by the Parties in this case shall be unclassified.  This requirement applies to all motions, pleadings, briefs, and any other document, including exhibits, correspondence, or anything appended thereto or filed therewith.  If the United States determines that a document or discovery response includes

-4-

information covered by paragraphs 2 or 3 above, the United States shall redact the information and provide the parties and Court with a redacted copy of the document or discovery response.

10.   The Clerk of the Court shall send attorneys for the United States a copy of all future decisions and notices for hearings in these cases.

11.   As the United States deems necessary, attorneys for the United States may attend all depositions and proceedings in this case and may make objections as necessary to protect national security information.  If attorneys for the United States assert an objection based on the need to protect national security information with respect to either witness testimony or documents introduced or otherwise relied upon during a deposition, then the witness shall be precluded from testifying with respect to the line of inquiry that engendered the objection, and the document shall be withdrawn from the record pending an order of the Court with respect to the scope of the government's national security objection.

12.   To protect the United States' interests, attorneys for the United States may participate in any proceeding in these cases, including but not limited to motions hearings, all pre-trial proceedings, or trial by making and opposing motions, submitting briefs, and participating in arguments.

13.   The United States shall be excepted from all party discovery during the pendency of its motions to dismiss the claims against the Department of Defense. It is so ordered.

Dated:   August 29, 2007   _____


PHILIP M. PRO
United States District Judge

-5-

Case 3:06-cv-00056-PMP-VPC   Document 252   Filed 08/29/2007   Page 1 of 3

EXHIBIT

3

1

2               UNITED STATES DISTRICT COURT

3                  DISTRICT OF NEVADA

4                        * * *

5   DENNIS MONTGOMERY and the          )
    MONTGOMERY FAMILY TRUST            )
6                                      )   3:06-CV-00056-PMP-VPC
             Plaintiffs,               )   BASE FILE
7                                      )
        vs.                            )   3:06-CV-00145-PMP-VPC
8                                      )
    ETREPPID TECHNOLOGIES, LLC;        )   **ORDER RE PROTECTIVE ORDER**
9   WARREN TREPP; and the UNITED       )
    STATES DEPARTMENT OF DEFENSE,      )
10                                     )
             Defendants.               )
11  _____ )
                                       )
12  AND ALL RELATED MATTERS.           )
                                       )
13

14          Prior to consolidation of these two related cases, Defendant United States

15  Department of Defense filed Motions for Protective Order (3:06-CV-00056-PMP-VPC,

16  Doc. #83, and 3:06-CV-00145-PMP-VPC, Doc. #51) to prevent disclosure of information

17  that could harm the national security interests of the United States.  Specifically, the United

18  States' seeks a protective order pursuant to Federal Rule of Civil Procedure 26(c) to prevent

19  the disclosure of information relating to (1) the existence or non-existence of any actual or

20  proposed relationship, agreement, connection, contract, transaction, communication or

21  meeting of any kind between an intelligence agency as defined in 50 U.S.C. § 401(a)(4),

22  which includes intelligence elements of the military services; and (2) any actual or proposed

23  interest in, application, or use by any intelligence agency, or any current or former official,

24  employee, or representative thereof, of any technology, software, or source code, owned or

25  claimed by any individuals or entities associated with these lawsuits.

26  ///

EXHIBIT

3

1        The United States' supports its application for protective order under the military

2    and States Secret privilege by the Declaration of John D. Negroponte, formally Director of

3    National Intelligence, and a Classified Declaration which has been reviewed by the Court in

4    camera and ex parte, which demonstrate that disclosure of information at issue in this

5    litigation subject to the proposed protective order could be expected to cause serious, and

6    some cases exceptionally grave damage to national security.

7        Issues relating to whether information subject to a claim of military and states

8    secrets privilege were contained in pleadings, motions, declarations and other materials

9    filed in these consolidated cases as well as in the related in the Search Warrant case (3:06-

10   CV-0263-PMP-VPC), have required considerable attention by the parties and the Court.  In

11   this regard, counsel for Defendant United States' and those authorized to assert the military and

12   states secrets privilege on behalf of Defendant United States' have met with counsel in these

13   related actions as well as with counsel in the related Search Warrant case, and have reviewed

14   copies of all pleadings, motions, documents and exhibits filed in the above referenced cases

15   for the purpose of identifying and redacting those portions subject to a claim of military and

16   state secrets privilege on behalf of Defendant United States.  The Court has reviewed all

17   such papers in camera and ex parte with counsel for Defendant United States' and those

18   authorized to assert the military and states secret privilege on behalf of Defendant United

19   States, and has approved the redaction of material subject to the privilege claim.

20       Defendant United States' Department of Defense Motion for Protective Order

21   has now been fully briefed and on June 12, 2007, the Court conducted a hearing regarding

22   the United States' Motion for Protective Order and other pending motions.

23       On June 21, 2007, Defendant United States' filed a Revised Proposed Protective

24   Order (3:06-CV-00056-PMP-VPC (Doc. #196).  The Court finds that said Protective Order

25   is warranted as to form and content and hereby approves the same.

26   ///

1

IT IS THEREFORE ORDERED that Defendant United States Department of

2  Defense Motions for Protective Order (3:06-CV-00056-PMP-VPC, Doc. #83, and 3:06-CV-

3  00145-PMP-VPC, Doc. #51) is GRANTED.

4

5  DATED: August 29, 2007.

6

7  _____

8  PHILIP M. PRO
   United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

3



EXHIBIT
4

**John**

| From: | Addington, Greg (USANV) <Greg.Addington@usdoj.gov> |
|---|---|
| Sent: | Tuesday, February 2, 2021 2:01 PM |
| To: | John |
| Subject: | RE: Letter dated October 9 re Dennis Montgomery |

Mr. Doubek:

I am now advised the agency review of the materials you provided has been completed. The proposed civil complaint you forwarded for review has been reviewed and the public disclosure of that document has been determined to not implicate any concerns arising from the protective order entered in 2007 by the US district court in Nevada in the earlier litigation. No views are expressed regarding the viability of the claims described in the reviewed document.

**GREG ADDINGTON**
Assistant United States Attorney
Bruce R. Thompson U.S. Courthouse & Fed. Bldg.
400 South Virginia Street, Suite 900
Reno, NV 89501
(775) 334-3347 - direct
(775) 784-5438 - office
(775) 784-5181 - facsimile
Greg.Addington@usdoj.gov

**From:** John <john@lawyerinmontana.com>
**Sent:** Monday, December 28, 2020 1:38 PM
**To:** Addington, Greg (USANV) <GAddington@usa.doj.gov>
**Subject:** Re: Letter dated October 9 re Dennis Montgomery

Thanks. We will go forward. John D

Sent from my iPhone

> On Dec 28, 2020, at 11:20 AM, Addington, Greg (USANV) <Greg.Addington@usdoj.gov> wrote:
>
> Mr. Doubek:
>
> My reliable source for information on this matter obviously is not as reliable as I thought it to be. To avoid misleading you and to avoid any speculation on my part about what someone else is doing (and when) I can only say I do not know when the internal review will be complete and thus do not know when you will get a response to your enquiry.
>
> **GREG ADDINGTON**
> Assistant United States Attorney
> Bruce R. Thompson U.S. Courthouse & Fed. Bldg.
> 400 South Virginia Street, Suite 900
> Reno, NV 89501
> (775) 334-3347 - direct



EXHIBIT
4

1

(775) 784-5438 - office
(775) 784-5181 - facsimile
Greg.Addington@usdoj.gov

**From:** Addington, Greg (USANV)
**Sent:** Monday, December 14, 2020 9:35 AM
**To:** John <john@lawyerinmontana.com>
**Subject:** Re: Letter dated October 9 re Dennis Montgomery

I am reliably informed the review of materials referenced below is nearing completion - my expectation is for some sort of meaningful response for you within 10 days.

Sent from my iPhone


On Dec 11, 2020, at 1:43 PM, John <john@lawyerinmontana.com> wrote:


Greg, I know that Dennis wants to get all claims wrapped up. Presumably we would need to need to involve a number of entities, such as the CIA, DoD, FBI, and NSA. There must be someone or a couple of "someones" who could weigh in and get this resolved, but that is whom I believe we need to have. We are willing to meet where ever to do so. John

**From:** Addington, Greg (USANV) <Greg.Addington@usdoj.gov>
**Sent:** Friday, December 11, 2020 12:54 PM
**To:** John <john@lawyerinmontana.com>
**Subject:** RE: Letter dated October 9 re Dennis Montgomery

I have been making further enquiries this past week but have no meaningful information for you regarding the status of the review of materials you provided. I will continue my efforts.

**GREG ADDINGTON**
Assistant United States Attorney


**From:** John <john@lawyerinmontana.com>
**Sent:** Tuesday, December 1, 2020 3:39 PM
**To:** Addington, Greg (USANV) <GAddington@usa.doj.gov>
**Subject:** RE: Letter dated October 9 re Dennis Montgomery

Thanks for your quick reply. I hate to say it but this is not an EIS that needs to be scrutinized and evaluated by the Corp of Engineers for months on end. My client wants to amicably resolve all of his claims. He wants to do it completely. John D

**From:** Addington, Greg (USANV) <Greg.Addington@usdoj.gov>
**Sent:** Tuesday, December 1, 2020 3:58 PM
**To:** John <john@lawyerinmontana.com>
**Subject:** RE: Letter dated October 9 re Dennis Montgomery

I will enquire regarding the status of the review initiated last month.

**GREG ADDINGTON**
Assistant United States Attorney

**From:** John <john@lawyerinmontana.com>
**Sent:** Tuesday, December 1, 2020 2:48 PM
**To:** Addington, Greg (USANV) <GAddington@usa.doj.gov>
**Subject:** RE: Letter dated October 9 re Dennis Montgomery

Mr. Addington, my client has been patient for many years now. If the government wants to resolve things with my client, it best do so asap. John Doubek

**From:** Addington, Greg (USANV) <Greg.Addington@usdoj.gov>
**Sent:** Monday, October 26, 2020 11:12 AM
**To:** John <john@lawyerinmontana.com>
**Subject:** RE: Letter dated October 9 re Dennis Montgomery

Mr. Doubek:

Thank you for your patience in this matter. Your October 9 letter has been referred to me for response. Your letter references a proposed "Bivens" complaint you intend to file on behalf of Mr. Montgomery. You also reference and provide a copy of the protective order entered by the U.S. District Court in 2007 in litigation involving Mr. Montgomery. As you know, the protective order describes categories of information and materials which cannot be disclosed and which cannot be the subject of discovery or evidentiary presentation, based on the US invocation of its state secrets privilege.

In your letter, you state your view that the protective order "clearly prevents Dennis Montgomery from filing a Bivens complaint and possibly other complaints against the Government." You request this office's views as to "how you want us to proceed."

It is our view the protective order remains in place to preclude disclosure of the categories of information and related materials described in the order, based on the circumstances giving rise to the protective order – including the state secrets privilege invoked by the United States. As you know, the protective order includes a mechanism for US review of materials if there is a concern about specific information or materials which might arguably be encompassed by the order.

We cannot assess what, if anything, in the proposed Bivens complaint might be implicated by the terms of the protective order because we do not have a copy of the proposed complaint. If you will provide me with a draft copy of the Bivens complaint (and any corresponding materials you would anticipate disclosing as part of the filing of the complaint), as contemplated by the terms of the protective order, I will obtain the review of the complaint/materials consistent with the protective order and advise you accordingly. I am supposing that review would be completed within 30 days – though that expectation is tempered by the fact that I do not know if your proposed complaint is 5 pages long or 500 pages long so I cannot now commit to a firm time period for the review.

3

If you have any questions, do not hesitate to contact me.

**GREG ADDINGTON**
Assistant United States Attorney
Bruce R. Thompson U.S. Courthouse & Fed. Bldg.
400 South Virginia Street, Suite 900
Reno, NV 89501
(775) 334-3347 - direct
(775) 784-5438 - office
(775) 784-5181 - facsimile
Greg.Addington@usdoj.gov

**From:** John <john@lawyerinmontana.com>
**Sent:** Tuesday, October 20, 2020 3:16 PM
**To:** Addington, Greg (USANV) <GAddington@usa.doj.gov>
**Subject:** RE: Letter dated October 9 re Dennis Montgomery

Mr. Addington: My client would like to get this matter resolved sooner than later.
Because Of Mr. Negroponte's SS directive, my client has been stripped of his rights to do
a lot of things for too many years now. Please get back to me asap. John D

**From:** Addington, Greg (USANV) <Greg.Addington@usdoj.gov>
**Sent:** Tuesday, October 20, 2020 4:12 PM
**To:** John <john@lawyerinmontana.com>
**Subject:** Letter dated October 9 re Dennis Montgomery

Mr. Doubek:

Your above-referenced October 9 letter was received. The matters described therein are
being reviewed for appropriate response.

**GREG ADDINGTON**
Assistant United States Attorney
Bruce R. Thompson U.S. Courthouse & Fed. Bldg.
400 South Virginia Street, Suite 900
Reno, NV 89501
(775) 334-3347 - direct
(775) 784-5438 - office
(775) 784-5181 - facsimile
Greg.Addington@usdoj.gov