C. SALVATORE D'ALESSIO, JR.
Acting Director
Torts Branch, Civil Division

PAUL WERNER
Senior Trial Counsel
Torts Branch, Civil Division

KELLY HEIDRICH
Senior Trial Attorney
Torts Branch, Civil Division
Admitted Pursuant to Local Rule IA-11-3
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044
(202) 616-4371
Kelly.Heidrich@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| Dennis Montgomery and Brenda Montgomery, | ) ) ) | 3:21-cv-00128-MMD-WGC |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **DEFENDANT MICHAEL WEST'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEUDRE 12(b)(6) AND MEMORANDUM IN SUPPORT** |
| Special Agent Michael West, and Nine Unknown Named Agents of the Federal Bureau of Investigation, Internal Revenue Service, and Drug Enforcement Agency | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................................iii

SUMMARY OF ARGUMENT ....................................................................................... 1

STANDARD OF REVIEW .............................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 2

ARGUMENT ................................................................................................................... 4

I.      Plaintiffs' Claim Is Barred By the Statute of Limitations.................................. 4

II.     A *Bivens* Claim Is Not Available in this New Context. ................................... 5

        A.      Plaintiffs' claim presents a new *Bivens* context.................................... 9

        B.      Plaintiffs had access to alternative remedial processes......................10

        C.      Special factors counsel against recognition of a *Bivens* remedy..........12

III.    SA West Is Entitled to Qualified Immunity. ....................................................14

        A.      The Complaint fails to allege SA West's involvement in many of the purported violations. ...............................................................................17

        B.      The Complaint fails to state a clearly established violation against SA West. .....19

CONCLUSION...............................................................................................................20

1
2

# TABLE OF AUTHORITIES

**Federal Cases**

*Ahlers v. Schebil,*
    188 F.3d 365 (6th Cir. 1999) ........................................................ 19

*Anderson v. Creighton,*
    483 U.S. 635 (1987) ..................................................................... 15

*Arar v. Ashcroft,*
    585 F.3d 559 (2d Cir. 2008) ....................................................... 9, 14

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) .............................................................. 15, 19

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................. passim

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................... 2

*Binay v. Bettendorf,*
    601 F.3d 640 (6th Cir. 2010) ........................................................ 14

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
    403 U.S. 388 (1971) ..................................................................... 6

*Carlson v. Green,*
    446 U.S. 14 (1980) ....................................................................... 6

*Colson v. Grohman,*
    174 F.3d 498 (5th Cir. 1999) ........................................................ 19

*Corr. Servs. Corp. v. Malesko,*
    534 U.S. 61 (2001) ....................................................................... 8

*Davis v. Billington,*
    681 F.3d 377 (D.C. Cir. 2012) ..................................................... 12

*Davis v. Passman,*
    442 U.S. 228 (1979) ..................................................................... 6

*Deaver v. Seymour,*
    822 F.2d 66 (D.C. Cir. 1987) ....................................................... 10

*District of Columbia v. Wesby,*
    138 S. Ct. 577 (2018) .................................................................. 16

*Farah v. Weyker,*
    926 F.3d 492 (8th Cir. 2019) ....................................................... 12

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ..................................................................... 12

*Hernandez v. Mesa,*
    137 S. Ct. 2003 (2017) ................................................................. 7

*Hernandez v. Mesa,*
   140 S. Ct. 735 (2020) ................................................................ 7, 9, 13

*Hunter v. Bryant,*
   502 U.S. 224 (1991) ....................................................................... 16, 20

*Lebron v. Rumsfeld,*
   670 F.3d 540 (4th Cir. 2012) ................................................................ 13

*Leyland v. Edwards,*
   797 F. Supp. 2d 7 (D.D.C. 2011) ......................................................... 11

*Liff v. Off. Of Inspector Gen. for U.S. Dep't of Labor,*
   881 F.3d 912 (D.C. Cir. 2018) ............................................................. 11

*Malley v. Briggs,*
   475 U.S. 335 (1986) ............................................................................. 16

*Meeks v. Larsen,*
   999 F. Supp. 2d 968 (E.D. Mich. 2014) .............................................. 11

*Meshal v. Higgenbotham,*
   804 F.3d 417 (D.C. Cir. 2015) ............................................................. 12

*Mitchell v. Forsyth,*
   472 U.S. 511 (1985) ............................................................................. 16

*Moore v. Hartman,*
   547 U.S. 250 (2006) ............................................................................. 19

*Mullenix v. Luna,*
   136 S. Ct. 305 (2015) ........................................................................... 16

*Pearson v. Callahan,*
   555 U.S. 223 (2009) ...................................................................... 14, 15

*Porous Media Corp. v. Pall Corp.,*
   186 F.3d 1077 (8th Cir. 1999) ............................................................ 2, 3

*Rehberg v. Paulk,*
   611 F.3d 828 (11th Cir. 2010) .............................................................. 19

*Reza v. Pearce,*
   806 F.3d 497 (9th Cir. 2015) ............................................................... 16

*Robertson v. Lucas,*
   753 F.3d 606 (6th Cir. 2014) ............................................................... 14

*S.B. v. County of San Diego,*
   864 F.3d 1010 (9th Cir. 2016) ............................................................. 15

*Schweiker v. Chiliky,*
   487 U.S. 412 (1987) ..................................................................... 7, 8, 11

*Scott v. Harris,*
   550 U.S. 372 ......................................................................................... 16

*Siegert v. Gilley,*
   500 U.S. 226 (1991) ............................................................................. 16

*United States v. Stanley*,
  483 U.S. 669 (1987) ........................................................................ 8
*Wallace v. Kato*,
  549 U.S. 384 (2007) ..................................................................... 4, 5
*White v. Pauly*,
  137 S. Ct. 548 (2017) ....................................................................15
*Wilkie v. Robbins*,
  551 U.S. 537 (207) ................................................... 7, 8, 11, 12
*Wilson v. Layne*,
  526 U.S. 603 (1999) .......................................................................15
*Wilson v. Libby*,
  535 F.3d 697 (D.C. Cir. 2008) ......................................... 8, 9, 12, 14
*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017) ............................................................passim

**Federal Statutes**

28 U.S.C. § 2073 .............................................................................11
28 U.S.C. § 2074 .............................................................................11
42 U.S.C. § 388 ............................................................................... 3
42 U.S.C. § 1983 ............................................................................. 3

**State Statutes**

Nev. Rev. Stat. § 11.190(4)(e) ...................................................... 4

**Federal Rules**

Fed. R.Civ. P. 12(b)(6) ................................................................ 4
Fed. R. Cri. P. 41(g) .................................................................3, 11

**Federal Regulations**

32 C.F.R. § 2001.10 .......................................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SUMMARY OF ARGUMENT

Plaintiffs have filed this claim against former FBI Special Agent Michael West ("SA West"), alleging that SA West violated their constitutional rights in the course of a 2006 investigation into allegations that Plaintiff Dennis Montgomery unlawfully possessed and retained national defense information. Compl. ¶ 7; *In the Matter of the Search of 12720 Buckthorn Lane, et al*, 3:06-cv-0263-LRH *and* 3:06-MJ-0023-VPC, Dkt. No. 86, at 31. SA West now moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This claim should be dismissed first because it was filed well outside of the two-year statute of limitations for *Bivens* claims. Moreover, the Court should decline to recognize Plaintiffs' individual-capacity damages claim against SA West under the analysis set forth in *Ziglar v. Abbasi* because neither Congress nor the Supreme Court has authorized a constitutional damages remedy against a line-level law enforcement agent in this context, and special factors counsel against expanding *Bivens* to encompass Plaintiffs' claim. 137 S. Ct. 1843 (2017). Furthermore, SA West is entitled to qualified immunity both because the Complaint does not contain sufficient well-pled factual allegations to plausibly suggest that he personally participated in any constitutional violation, and because those allegations do not state a violation of any clearly established constitutional right.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible "when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When evaluating sufficiency, the reviewing court assumes the truth of only the well-pled factual allegations, but sets aside the complaint's legal conclusions and conclusory statements.

*Iqbal,* 556 at 681. Evaluating the sufficiency of a pleading is a "context-specific task" that "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When the factual allegations are "'merely consistent with a defendant's liability,' [the plaintiff] has failed to state a claim." *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). Similarly, if the facts put forth in the complaint do not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has now 'show[n]' – that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

## FACTUAL BACKGROUND[1]

In early 2006, the FBI opened an investigation of Plaintiff Dennis Montgomery after receiving information that Montgomery unlawfully retained documents containing classified national defense information. Compl. ¶ 3; *see also In the Matter of the Search of 12720 Buckthorn Lane, et al.,* Case No. 3:06-cv-00263-PMP-VPC ("Rule 41(g) Proceeding"). On March 1 and 3, 2006, Plaintiffs allege that SA West, eight unidentified FBI Agents, and unidentified agents from the Internal Revenue Service and Drug Enforcement Agency, executed search warrants on Plaintiffs' home and storage units. Pursuant to the warrants, numerous documents and electronic storage devices were seized. Compl. ¶ 2.

During the search of Plaintiffs' home, the Complaint alleges that "the ten agents had their guns drawn and had a camera crew." *Id.* The Complaint also states that "these special agents" harassed Plaintiffs' children by calling them and telling them that Dennis Montgomery was

---

[1] The facts in this section are taken from the Complaint and accompanying exhibits, as well as materials that are "necessarily embraced by the pleadings," including publicly available court documents concerning proceedings connected with the current litigation. *See Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999) (on motion to dismiss, court may consider such documents).

"being investigated for stealing U.S. Government classified documents and would be tried under U.S. espionage laws." *Id*.

Shortly thereafter, Plaintiffs moved for the return of the seized property under Federal Rule of Criminal Procedure 41(g), arguing that the warrants were not supported by probable cause and were only obtained because "altered documents" and "a false affidavit" of probable cause were submitted to the issuing magistrate judge. *Id*. ¶ 3. Plaintiffs also requested that the court unseal the affidavits of probable cause. *See* Rule 41(g) Proceeding, Dkt. No. 86, at 1. The government opposed the motions; the parties submitted briefing and the court held an evidentiary hearing, and ultimately ordered the return of Dennis Montgomery's property and unsealed the affidavits. *Id*. No criminal charges were filed as a result of the investigation.

Plaintiffs filed this lawsuit fifteen years later, on March 17, 2021. The four-page Complaint identifies itself as a claim pursuant to *Bivens*, and names SA West as the individual-capacity defendant. While the Complaint is short on detail and long on conclusory allegations, it asserts that the 2006 searches violated Plaintiffs' constitutional rights.[2] The Complaint also alleges, in conclusory fashion, that "the Federal agents" interfered in "a business dispute" some unspecified time after the resolution of the 41(g) motion. Compl. ¶ 7. The IRS also allegedly "retaliated against Plaintiffs" by auditing their prior tax returns. *Id*. Further retaliation took the form of a "lifetime gag order in the form of a US protective order (PO) and State Secrets privilege," the purpose of which was allegedly to cover up government misconduct in domestic surveillance programs. *Id*. ¶ 8. Moreover, "the Government" supposedly prevented Plaintiffs from defending themselves in an IRS audit, resulting in Plaintiffs' bankruptcy. *Id*. ¶ 9. In 2015,

---

[2] The Complaint also alleges that the searches violated their rights under 42 U.S.C. § 1983, which applies to state, not federal, officials, and 42 U.S.C. § 388, which does not exist.

3

various law enforcement agencies allegedly conducted a warrantless raid on the offices of Plaintiffs' attorneys, seizing numerous documents. *Id*. ¶ 10. Defendant SA West now moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

**I.      Plaintiffs' Claim Is Barred By the Statute of Limitations.**

At the outset, Plaintiffs' claim is barred by Nevada's two-year statute of limitations for *Bivens* claims. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (*Bivens* claims are subject to the forum state's statute of limitations for personal injury claims); Nev. Rev. Stat. § 11.190(4)(e) (two-year statute of limitations). The searches and seizures giving rise to Plaintiffs' claim against SA West took place in March 2006. Compl. ¶ 2. Plaintiffs did not file this lawsuit until 2021.

Plaintiffs attempt to circumvent the obvious time bar by alleging that they were prohibited from filing suit due to the United States' 2006 invocation of the state secrets privilege as to some information contained in the affidavits of probable cause submitted in support of the search warrants executed on Plaintiffs' home and storage units. These assertions are legal conclusions rather than factual allegations, and therefore not entitled to the presumption of truth; regardless, it is clear that Plaintiffs themselves did not consider the state secrets privilege to be a bar to litigation until quite recently, as they filed suit in 2007 against eTreppid Industries (Dennis Montgomery's former employer), and the Department of Defense. Compl. ¶ 8, Ex. 1. The implication of the state secrets privilege in that case was efficiently addressed via a protective order.

Plaintiffs attempt to excuse their statute of limitations problem by alleging, in conclusory fashion, that "the Government" told them they were prohibited from filing this suit. The "lifetime gag order" Plaintiffs claim they were subject to actually consists of two documents relating to Plaintiffs' long-running legal dispute with eTreppid – an assertion of the state secrets privilege

executed in September 2006, and the resulting protective order entered in the litigation. Compl. ¶ 8.

In reality, neither of those things prevented Plaintiffs from filing this lawsuit; the state secrets claim protected only the production or disclosure of information regarding the relationship between Dennis Montgomery, eTreppid, and the United States Intelligence Community, and any evidence of how, or whether, the technology and source code at issue in the litigation was used by the National Intelligence Community. *See* ECF No. 1, Ex. 2, at 16-17. The protective order entered in the underlying litigation was similarly limited, *id.*, and Plaintiffs do not explain how the limited state secrets privilege prevented them from filing this lawsuit against SA West for violating his Fourth Amendment rights. Indeed, when Plaintiffs did decide to file suit – in 2020, fourteen years after the events at issue – they simply did what the assertion of state secrets required, and obtained a review of their Complaint and attachments prior to filing to ensure that no privileged information was disclosed. That review took all of four months, and concluded with an assessment that Plaintiffs' filing of their Complaint did not violate the protective order. *See* ECF No. 1, Ex. 4, at 23-26. Nowhere do Plaintiffs explain why they did not do this at any point prior to 2020. The protective order remains in place now as it has since 2007. Nothing has changed in the interim. Thus, just as Plaintiffs filed their Complaint now, they could have done so over the last fourteen years. Consequently, Plaintiffs' claim should be dismissed on statute of limitations grounds.

## II.     A *Bivens* Claim Is Not Available in this New Context.

The Complaint alleges that SA West violated the Plaintiffs' constitutional rights by obtaining search warrants for their home and storage units through presenting "a false affidavit and altered documents to the Court." Compl. ¶3. In short, their Complaint appears to allege an

unlawful search and seizure. Presumably, therefore, Plaintiffs are asserting a violation of their Fourth Amendment rights; but asserting a violation is not the same as identifying a cause of action, and causes of action pursuant to *Bivens* are both limited and disfavored. The Supreme Court has never recognized a *Bivens* remedy in the context of this Complaint, and this Court should decline to do so now based on the analysis set forth by the Supreme Court in *Ziglar v. Abbasi.*

In 1971, the Supreme Court took the unprecedented step of creating a private cause of action under the Fourth Amendment – without Congressional authorization – after holding there were "no special factors counselling hesitation." *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396, 397 (1971) (authorizing private damages remedy against line-level federal agents who entered and searched plaintiff's home without a warrant, handcuffed him, and arrested him for suspected drug violations). The Supreme Court has extended *Bivens* only twice since then, and only after noting the absence of special factors. *See Davis v. Passman*, 442 U.S. 228, 245 (1979) (recognizing equal protection claim against a congressman for firing his female secretary); *Carlson v. Green*, 446 U.S. 14, 18-19 (1980) (recognizing claim against prison officials for failing to treat inmate's asthma). "These three cases – *Bivens*, *Davis*, and *Carlson* – represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855. The Supreme Court's retreat from *Bivens* is no accident: respect for "separation of powers" means the creation of damages claims should be "committed to those who write the laws rather than those who interpret them." *Abbasi*, 137 S. Ct. at 1857 (quotation marks and citations omitted). "Congress," not the Judiciary, "is best positioned to evaluate 'whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers

and employees of the Federal Government' based on constitutional torts." *Hernandez v. Mesa,* 140 S. Ct. 735, 742 (2020) (quoting *Abbasi*, 137 S. Ct. at 1856).

When presented with a case that could potentially expand *Bivens* into a "new context," the "antecedent" question is whether the court should devise a new freestanding damages remedy under the Constitution. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017). A *Bivens* remedy is "not an automatic entitlement." *Wilkie v. Robbins*, 551 U.S. 537 (207), at 550. To the contrary, authorizing a new *Bivens* action is now an explicitly "'disfavored' judicial activity." *Abbasi* 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675).

Under the current analytical framework, the "first question a court must ask" when a plaintiff invokes *Bivens* as the basis for a damages action is whether "the case presents a new *Bivens* context." *Abbasi*, 137 S. Ct. at 1859, 1864. The Court defined "new context" broadly, stating that "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by the [Supreme] Court," the context is new. *Id.* at 1859, 1860. Only three cases, therefore, comprise the entire universe of established *Bivens* contexts: *Bivens* itself, which recognized a cause of action under the Fourth Amendment against law enforcement officers for "handcuffing a man in his own home without a warrant"; *Davis*, a Fifth Amendment gender discrimination claim "against a congressman for firing his female secretary"; and *Carlson*, an Eighth Amendment claim against prison officials for failing to provide an inmate with medical care, leading to his death. *Abbasi*, 137 S. Ct. at 1860.

Once the Court is satisfied that a claim constitutes a new *Bivens* context, it then applies the two-step inquiry first articulated in *Wilkie*. *Id*. The first question in the *Wilkie* test is whether there is "any alternative, existing process for protecting" a plaintiff's interests. *Wilkie*, 551 U.S. at 537, *see also Schweiker v. Chiliky,* 487 U.S. 412, 425 (1987). In fact, the "remedy" need not

be a cause of action at all, let alone a cause of action for damages; it may just be a "process," *Wilkie*, 551 U.S. at 550, or a "safeguard," *Schweiker*, 487 U.S. at 425. "So long as the plaintiff had an avenue for some redress, bedrock principles separation of powers foreclose[] judicial imposition of a new substantive liability." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001) (emphasis added). It is immaterial whether the existing scheme remedies the precise harm claimed by the potential *Bivens* plaintiff: "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863; *see also United States v. Stanley*, 483 U.S. 669, 683 (1987) ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [plaintiff] an 'adequate' federal remedy for his injuries.").

Even if there is no alternative process, the second prong of the *Wilkie* analysis may still foreclose a *Bivens* expansion if there are any "special factors counseling hesitation." Put broadly, the special factors inquiry should "concentrate on whether the judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58; *see also Schweiker*, 487 U.S. at 423 (the special factors analysis requires "appropriate judicial deference to indications that congressional inaction has not been inadvertent"). While any issue that arises in the context of a particular case may constitute a "special factor," *Abbasi* specifically identified separation-of-powers concerns as a factor that frequently arises. 137 S. Ct. at 1858. Separation-of-powers concerns may be implicated, for instance, when litigation may "require judicial intrusion into matters of national security and sensitive intelligence information." *Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008). While the "state secrets privilege and the more frequent use of *in camera* judicial proceedings" may provide some safeguards, they cannot provide "absolute protection"; that alone is reason enough to counsel hesitation before creating a new implied

damages remedy. *Id.* at 710; *see also Abbasi*, 137 S. Ct. at 1861 ("Judicial inquiry into the national-security realm raises concerns for the separation of powers in trenching on matters committed to the other branches." (internal quotation marks omitted)); *Arar v. Ashcroft*, 585 F.3d 559, 577-78 (2d Cir. 2008) (en banc) (declining to recognize a new *Bivens* cause of action in part because the litigation would "very likely mean that some documents or information…would be redacted, reviewed *in camera*, and otherwise concealed from the public[,]" and while "concealment does not bespeak wrongdoing[,]" the likelihood that litigation would involve closed court proceedings counseled hesitation before creating the new cause of action).

Under this analysis, Plaintiffs' proposed *Bivens* expansion should be rejected. Plaintiffs' allegations certainly present a new Fourth Amendment context, and Plaintiffs not only had, but used, the protections and remedial processes provided by the criminal justice system to secure the return of their seized property. And even if they had not, this case implicates several special factors that counsel hesitation before extending a novel *Bivens* cause of action.

### A.  Plaintiffs' claim presents a new *Bivens* context.

The *Abbasi* court explicitly held that *Bivens* provides a Fourth Amendment damages remedy only in the limited "search-and-seizure context in which it arose." 137 S. Ct. at 1856. *Bivens* does not provide, and *Abbasi* specifically denies, that an individual-capacity damages remedy is available for any and all alleged violations of the Fourth Amendment. *Id.* at 1864 ("[E]ven a modest extension is still an extension."); *see also Hernandez*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

Even though Plaintiffs raise a Fourth Amendment claim based on an unlawful search and seizure, as the plaintiff did in *Bivens*, the alleged facts and underlying violation fundamentally

diverge, and recognizing a cause of action would constitute a significant expansion of *Bivens*. *Abbasi* explicitly recognized that a claim may present a novel context if the defendant officer was operating under a different "statutory or other legal mandate" than in *Bivens* itself. *Id*. at 1860. That is clearly the case here. Where the defendants in *Bivens* allegedly subjected the plaintiff to a warrantless arrest and handcuffing in his home on suspected narcotics violations, the Plaintiffs here allege that SA West obtained warrants to search their home and storage facilities, and seized documents that at the time were suspected of containing classified information with national security implications. Moreover, the purported Fourth Amendment violation is not a wrongful arrest, as was the case in *Bivens,* but rather the alleged omission of information from and misunderstanding of materials in the search warrant applications. Considering the significant difference from *Bivens* in both the facts and violation alleged, and that the new-context inquiry is "easily satisfied," *Abbasi*, 137 S. Ct. at 1865, Plaintiffs' claim clearly presents a new context, and is therefore subject to the *Wilkie* analysis.

**B.      Plaintiffs had access to alternative remedial processes.**

Under the *Wilke* analysis, the Court should decline to recognize Plaintiffs' new-context Fourth Amendment claim because there are alternative processes in place to remedy unconstitutional seizures of property pursuant to a warrant, and where "alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863.

First and foremost, Plaintiffs were able to challenge – successfully – the search and seizure of their property via the Federal Rules of Criminal Procedure, standards that were statutorily enacted by Congress. *See* 28 U.S.C. §§ 2073, 2074; *see also Deaver v. Seymour*, 822 F.2d 66, 70 n.9 (D.C. Cir. 1987) (holding that the Federal Rules of Criminal Procedure "have the force of law"). Plaintiffs moved to unseal the affidavits of probable cause submitted in support of

the warrants, and for the return of their seized property pursuant to Federal Rule of Criminal Procedure 41(g). Their motions were granted despite the fact that Rule 41(g) generally only contemplates motions to return property after an indictment has been issued. *See* Compl. ¶¶ 3-4; *see also* Rule 41(g) Proceeding. That process provides an alternative scheme that precludes implying a damages remedy here. *See Meeks v. Larsen*, 999 F. Supp. 2d 968, 981 (E.D. Mich. 2014) (holding that 41(g) provides alternative process precluding *Bivens* claim under Second Amendment); *Leyland v. Edwards*, 797 F. Supp. 2d 7, 10-11 (D.D.C. 2011) (same for Fifth Amendment claim).

More broadly, the criminal process itself is fundamentally designed to protect individuals against the sort of misconduct Plaintiffs allege, *see Schweiker*, 487 U.S. at 425, and the equitable relief offered by those protections has been recognized as an alternative remedial process. *See Abbasi*, 137 S.Ct. at 1865 (alternative remedies may include a "writ of habeas corpus, an injunction requiring the warden to bring his prison into compliance[,] or some other form of equitable relief."); *Wilkie*, 551 U.S. at 551–52 (listing the "right to jury trial on the criminal complaints" as an alternative process).

Moreover, the fact that the criminal process provides for equitable relief rather than damages is immaterial to the *Wilke* analysis, which does not consider whether the available remedial scheme is "adequate to provide all of the relief" the plaintiff seeks. S*ee Liff v. Off. Of Inspector Gen. for U.S. Dep't of Labor*, 881 F.3d 912, 920 (D.C. Cir. 2018). *Abbasi* and *Wilkie* make clear that if there is any remedial process available, courts should decline requests to create an additional, individual-capacity damages remedy against a government agent. *See Wilkie*, 551 U.S. at 554 (existence of alternative process implies that Congress "expected the judiciary to stay its *Bivens* hand" and not infer an additional damages remedy); *see also Abbasi*, 137 S. Ct. at

1863. Furthermore, while Plaintiffs were able to obtain relief under the scheme available to him here, a *Bivens* remedy is not necessarily warranted even when the available alternatives offer the plaintiff "no relief whatsoever." *Davis v. Billington*, 681 F.3d 377, 383 (D.C. Cir. 2012) (citing *Wilson*, 535 F.3d at 709).

### C.       Special factors counsel against recognition of a *Bivens* remedy.

Even if Plaintiffs lacked an equitable remedy process, extending a new *Bivens* remedy still runs afoul of *Wilkie* if "special factors counsel hesitation." *Abbasi*, 137 S. Ct. at 1857; *see also Meshal v. Higginbotham*, 804 F.3d 417, 425 (D.C. Cir. 2015) ("[E]ven if the choice is between *Bivens* or nothing, if special factors counsel hesitation, the answer may be nothing."). Under *Abbasi*, a "special factor" is anything that causes the Court to "pause" before extending the *Bivens* remedy in the absence of congressional authorization, and "[i]t does not take much to make us pause." *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019).

Several such factors are implicated here. First, when determining whether to recognize an implied damages remedy, courts must consider "the burdens on Government employees who are sued personally, and the projected costs and consequences to the Government itself." *Abbasi*, at 1858. Particularly in the area of law enforcement, recognition of a new *Bivens* remedy carries the inherent "danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible public officials, in the unflinching discharge of their duties." *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) (quoted with approval in *Wilkie*, 551 U.S. at 562). If law enforcement agents are discouraged by the potential for personal liability, the downwind chilling effect on investigating and enforcing violations of federal law may "make it less probable that Congress would want the Judiciary to entertain a damages suit." *Abbasi*, 137 S. Ct. at 1858.

This is of particular concern where, as here, the underlying investigation was originally understood to involve the mishandling of classified information, and where litigation of this claim potentially involves information subject to the state secrets privilege, raising both national security and separation-of-powers concerns. Although the government concluded three months after the seizures that the materials Montgomery had taken were not classified, SA West's and the government's understanding at the time the warrants were sought and executed was that the information in fact was classified. *See* Rule 41(g) Proceeding, Dkt. No. 86, at 18. Thus, implying a damages remedy in the context of this case may cause officials involved in investigating potential misuse of classified information to hesitate in carrying out their duties. The misuse of classified information, by definition, implicates national security concerns. *See* 32 C.F.R. § 2001.10 (information may be considered for classification where "its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security"). Thus, implying a cause of action that could negatively affect the investigation of such misuse, as would be the case here, raises national security concerns. As the *Abbasi* court made clear, special factors counsel hesitation in claims that raise such concerns. *See* 137 S. Ct. at 1861; *see also Hernandez*, 140 S. Ct. at 746.

Furthermore, although the filing of Plaintiffs' Complaint does not violate the protective order related to the state secrets privilege that is currently in place, it is possible that litigation of Plaintiffs' claim would ultimately implicate the protective order and that privilege; that possibility counsels hesitation. Courts have repeatedly refused to imply damages remedy in cases that may implicate sensitive and classified information. *See Lebron v. Rumsfeld*, 670 F.3d 540, 554 (4th Cir. 2012) ("Cautioning against the implication of a *Bivens* cause of action here are practical concerns about obtaining information necessary for the judiciary to assess the

challenged policies."); *Wilson*, 535 F.3d at 710 ("We also cannot ignore that, if we were to create a *Bivens* remedy, the litigation of the allegations in the amended complaint would inevitably require judicial intrusion into matters of national security and sensitive intelligence information."); *Arar*, 585 F.3d at 578-79. In light of these concerns, and the remedial scheme that Plaintiff had and used, there is ample reason for the Court to hesitate before expanding *Bivens* into this new context.

### III.   SA West Is Entitled to Qualified Immunity.

Putting aside the myriad concerns that would arise from inferring a new *Bivens* remedy in this case, the Complaint is fatally flawed because it fails to allege sufficient factual allegations to plausibly state a claim against SA West, who is entitled to qualified immunity. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted).

Because *Bivens* liability is personal, each government official may be held liable only for their own misconduct, and the plaintiff must plead and prove each defendant, "through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 666. "Simply put, to establish liability and overcome a qualified immunity defense, an individual must show that his or her *own* rights were violated, and that the violation was committed *personally* by the defendant." *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014).

Once qualified immunity is raised, "the burden is on the plaintiff to demonstrate that the officials are not entitled to [the defense]." *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010) (internal quotation marks omitted). To overcome qualified immunity at the motion-to-dismiss

stage, the plaintiff must plead sufficient facts to plausibly allege that: (1) each defendant violated

a constitutional right; and (2) the right was clearly established at the time of the alleged violation.

*See Wilson v. Layne*, 526 U.S. 603, 609 (1999). The reviewing court may exercise its discretion

as to which prong should be addressed first; when the underlying constitutional claim is complex

or novel, the court may leave knotty questions of whether the right was violated (or exists at all)

for another day, and resolve the case on the second prong. *Pearson*, 555 U.S. at 236, 238-39

(advising courts to proceed directly to prong two at the pleading stage where the facts alleged

make it difficult to determine whether a constitutional violation occurred).

On the second question, "[a] Government official's conduct violates clearly established

law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that

every reasonable official would have understood that what he is doing violates that right."

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal brackets, quotations, and citation

omitted). Essential to the qualified-immunity standard's operation is the level of generality at

which the asserted right is assessed. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The

Supreme Court has "repeatedly told courts – and the Ninth Circuit in particular, … – not to

define clearly established law at a high level of generality." *al-Kidd,* 563 U.S. at 742 (citation

omitted); *see also White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam); *S.B. v. County of San*

*Diego,* 864 F.3d 1010, 1015 (9th Cir. 2016) ("We hear the Supreme Court loud and clear."). This

standard "do[es] not require a case directly on point, but existing precedent must have placed the

. . . constitutional question beyond debate." *al-Kidd*, 563 U.S. at 742 (citations omitted). If the

"contours of the right in question" were not clearly established at the time of the events giving

rise to the claim, qualified immunity attaches and the defendants must be released. *Pearson*, 555

U.S. at 238–39. Thus, qualified immunity gives federal agents the benefit of the doubt, providing

"ample room for mistaken judgments" and protecting all government officials except "the plainly incompetent or those who knowingly violate the law." *See Malley v. Briggs*, 475 U.S. 335, 341 (1986). The specificity requirement is particularly important in the law enforcement arena, because it is often "difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (brackets and citation omitted). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (citation omitted).

Unlike the defenses available to non-governmental actors, qualified immunity protects federal agents not only against liability, but also from litigation itself, including discovery and trial. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (qualified immunity protects officials from "expensive and time consuming preparation to defend the suit on its merits" and from "not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit"); *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) (qualified immunity "cannot be effectively vindicated after the trial has occurred"). Because litigation exacts these costs whether or not liability is ultimately found, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also Scott v. Harris*, 550 U.S. 372, 376 n. 2 (2007) ("Qualified immunity is an *immunity from suit* rather than a mere defense to liability, and . . . is effectively lost if a case is erroneously permitted to go to trial." (emphasis in original) (internal quotations omitted)). *Accord Reza v. Pearce*, 806 F.3d 497, 507-08 (9th Cir. 2015) (affirming granting of officer's motion to dismiss on qualified immunity grounds). Here,

Plaintiffs have failed to allege sufficient facts demonstrating that SA West personally participated in the violation of Plaintiffs' clearly established constitutional rights.

### A.     The Complaint fails to allege SA West's involvement in many of the purported violations.

To determine whether the Complaint contains sufficient well-pled facts to plausibly allege that the Plaintiffs' rights were violated and that SA West personally participated in a clearly established violation, the first step is to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. In this instance, however, it is more efficient to identify the well-pled facts instead; the lion's share of the already bare-bones Complaint consists of legal conclusions and conclusory or generalized allegations that are not entitled to the presumption of truth. *Id.* at 679-81.

Despite the fact that the sole identified defendant is SA West in his individual capacity, he is hardly mentioned in the Complaint. His name comes up twice; in both instances, he is identified as one of ten (otherwise unidentified) agents who executed the warrants on Plaintiffs' home. Compl. ¶ 5. The Complaint also alleges that the "Federal Court ruled the searches and seizures were unlawful, and premised on false affidavits, and that the documents had been tampered with by the agents[.]" *Id.* ¶ 7. While SA West is not actually mentioned in this allegation, it clearly refers to the Magistrate's order on Plaintiffs' Rule 41(g) motion, in which the court identified SA West as the investigating agent who executed the affidavits of probable cause, and found that the affidavits contained enough uncorroborated or incorrect information to nullify the search warrants. *See generally* Rule 41(g) Proceeding, Dkt. No. 86.

None of the other allegations in the Complaint are tied to SA West in any fashion. The reamining allegations are attributed to an ambiguous grouping of unidentified and unnamed "defendants," various agencies of the United States government, or "the Government" itself

(save for those allegations that specifically refer to another, non-defendant government agent). Compl. ¶¶ 7-10. And all of the nefarious acts described – such as the allegedly retaliatory audit, issuance of the "gag order," and warrantless raid on Plaintiffs' lawyers' offices – are temporally removed from SA West's involvement, having allegedly occurred at some point after the Rule 41(g) hearing.

Moreover, those allegations are so lacking in factual detail that they amount to bald assertions and legal conclusions. Plaintiffs allege, for instance, that "Defendants" covered up government malfeasance in domestic surveillance by asserting the state secrets privilege. *Id.* ¶ 7. SA West, a line-level FBI agent investigating potential violations of federal criminal law, is not alleged to have participated in the coverup, nor is it clear which of Plaintiffs' constitutional rights could have been violated by the assertion of state secrets. By the same token, Plaintiffs' claim that they were prevented from filing this lawsuit by the state secrets privilege and a protective order entered in underlying litigation may be alluding to a First Amendment violation, but the Complaint offers no details, and SA West is not alleged to have participated. The Complaint also asserts that "the Government prohibited [Plaintiff] from defending himself against an IRS audit," but again offers no details as to what actually occurred, what right was violated, or how SA West was involved. Compl. ¶ 9. The final allegation refers to a warrantless "raid" on Plaintiff Dennis Montgomery's lawyer's office in 2015, in which numerous documents were seized and not returned, and suffers from the same deficiencies.

In light of the fact that SA West is the only actual defendant, none of those allegations – even if they contained any well-pled factual assertions - are relevant to Plaintiffs' actual claim.[3]

---

[3] Despite the occasional references to plural "Defendants," the Complaint make clear that the only cause of action is a *Bivens* claim against SA West. The caption of the Complaint identifies the lawsuit as "pursuant to *Bivens*," naming SA West and "nine unknown named agents of the

**B.     The Complaint fails to state a clearly established violation against SA West.**

Stripped of legal conclusions and bald assertion of wrongdoing, the Complaint does not allege sufficient facts to show that SA West violated a clearly established right. In fact, the Complaint wholly fails to identify what right he allegedly violated at all; it must be inferred from the allegations that Plaintiffs intended to bring a claim under Fourth Amendment, based on SA West's involvement in the 2006 investigation and search. But it is not sufficient for the Plaintiffs to imply that Agent West violated the Fourth Amendment in general – to overcome qualified immunity, the right in question must be specifically identified. Based on the pleadings, it is impossible to even begin to analyze whether, "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741.

If Plaintiffs' allegations that affidavits contained inaccurate or false information are meant to imply that SA West did not conduct an adequate investigation before applying for the search warrants, the result does not change. It is not clearly established that a Fourth Amendment right to an "adequate" investigation prior to seeking a search warrant exists, much less what the specific contours of that right may be. *See Rehberg v. Paulk*, 611 F.3d 828, 850 (11th Cir. 2010), *aff'd on other grounds*, 132 S. Ct. 1497 (2012); *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999); *Ahlers v. Schebil*, 188 F.3d 365, 373-74 (6th Cir. 1999); *cf. Moore v. Hartman*, 547 U.S. 250, 262 n.9 (2006). The fact that the warrants were later found to be unsupported by probable cause because the documents were later determined to not contain classified information is immaterial – for purposes of qualified immunity, the probable cause question looks to what

Federal Bureau of Investigation, Internal Revenue Service, and Drug Enforcement Agency." The only identified cause of action arises under the Constitution, and Plaintiffs seek only monetary damages – which are not available from the United States for constitutional violations.

information was known to the officer at the time, and whether it was reasonable to rely on that information. *See Hunter*, 502 U.S. at 228 (qualified immunity available for arresting officers "if at the moment the arrest was made, the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" the plaintiff committed a crime (citation and internal alterations omitted)). Given the inadequacy of the pleadings – lacking in specific factual allegations and reference to a specific constitutional violation – it is impossible to even begin such an inquiry. On the other hand, it is easy to conclude that the Complaint does not identify any clearly established constitutional right, much less its violation. Consequently, SA West is entitled to dismissal on qualified immunity grounds.

## CONCLUSION

For the reasons stated above, Plaintiffs' claim against Special Agent West should be dismissed with prejudice.

Dated: October 8, 2021                          Respectfully submitted,

                                                C. SALVATORE D'ALESSIO, JR.
                                                Acting Director
                                                Torts Branch, Civil Division

                                                PAUL WERNER
                                                Senior Trial Counsel
                                                Torts Branch, Civil Division

                                                 /s/ Kelly Heidrich
                                                KELLY HEIDRICH
                                                Senior Trial Attorney
                                                Constitutional Torts Staff
                                                Torts Branch, Civil Division
                                                (Admitted to Practice as Government Counsel in
                                                this Court under Local Rule IA-11-3)
                                                U.S. Department of Justice
                                                Ben Franklin Station, P.O. Box 7146
                                                Washington, D.C. 20044-7146
                                                T: (202) 616-4371
                                                Kelly.Heidrich@usdoj.gov

**CERTIFICATE OF SERVICE**

It is hereby certified that service of the foregoing **MOTION TO DISMISS** has been made through the Court's CM/ECF electronic filing and notification system on all system participants this 8th Day of October, 2021.

/s/ Kelly Heidrich
KELLY HEIDRICH